WO                                                                                                    JDN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Curtis Lee Block, | No.   CV 15-00288-PHX-GMS (MHB) |
| Plaintiff, | |
| vs. | **ORDER** |
| Phoenix Police Department, et al., | |
| Defendants. | |

Plaintiff Curtis Lee Block brought this pro se civil rights action under 42 U.S.C. § 1983 against Phoenix Police Department Officers Adam Applegate, James Ray, and Seth Jahnke.  (Doc. 7.)[1]  Before the Court is Defendants' Motion for Summary Judgment, which Plaintiff opposes.  (Docs. 34, 57.)

The Court will grant the Motion and terminate the action.

**I.     Background**

In his First Amended Complaint, Plaintiff alleged that on June 21, 2014, Defendants violated his Fourth Amendment rights when they entered the curtilage of his residence to arrest him without a warrant.  (Doc. 7.)

Defendants move for summary judgment on the grounds that (1) they did not violate the Fourth Amendment because Plaintiff had numerous misdemeanor warrants for his arrest and (2) Plaintiff's claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486–87

---

[1] Plaintiff is currently in custody of the Arizona Department of Corrections (ADC) in Tucson, Arizona.  (Doc. 43.)

1  (1994).  (Doc. 34.)

2  The Court issued an Order with the Notice required under *Rand v. Rowland*, 154

3  F.3d 952, 960 (9th Cir. 1998), which informed Plaintiff of the requirements of Federal

4  Rule of Civil Procedure 56.  (Doc. 37.)   After some procedural delays, the Motion for

5  Summary Judgment is fully briefed and ready for ruling.  (Docs. 57, 63.)[2]

6  **II.     Summary Judgment Standard**

7  A court must grant summary judgment "if the movant shows that there is no

8  genuine dispute as to any material fact and the movant is entitled to judgment as a matter

9  of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

10  (1986).  The movant bears the initial responsibility of presenting the basis for its motion

11  and identifying those portions of the record, together with affidavits, if any, that it

12  believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at

13  323.

14  If the movant fails to carry its initial burden of production, the nonmovant need

15  not produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d

16  1099, 1102–03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the

17  burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and

18  that the fact in contention is material, i.e., a fact that might affect the outcome of the suit

19  under the governing law, and that the dispute is genuine, i.e., the evidence is such that a

20  reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby,*

21  *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d

22  1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact

23

24  [2] In their Reply, Defendants request summary judgment based on Plaintiff's failure

25  to strictly comply with Local Rule of Civil Procedure 56.1(b), which requires the
nonmovant to submit a separate statement of facts with numbered paragraphs that

26  correspond to and agree with or dispute each paragraph of the movant's separate
statement of facts.  Because Plaintiff is a pro se prisoner litigant, the Court is required to

27  "construe liberally [his] motion papers" and "avoid applying summary judgment rules
strictly."  *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).  Moreover, Plaintiff's

28  Response and Separate Statement of Facts establish disputes with Defendants' asserted
facts.  Summary judgment on this basis will therefore be denied.

1   conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–

2   89 (1968); however, it must "come forward with specific facts showing that there is a

3   genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

4   U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

5       At summary judgment, the judge's function is not to weigh the evidence and

6   determine the truth but to determine whether there is a genuine issue for trial. *Anderson*,

7   477 U.S. at 249. In its analysis, the court does not make credibility determinations; it

8   must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.

9   *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The

10   court need consider only the cited materials, but it may consider any other materials in

11   the record. Fed. R. Civ. P. 56(c)(3).

12   **III.   Relevant Facts**

13       On June 14, 2014, Sergeant Jahnke met with members of his squad and informed

14   them that there was probable cause to arrest Plaintiff on an attempted robbery charge

15   stemming from a 2012 incident. (Doc. 35, Defs.' Statement of Facts ¶ 1.) Applegate

16   conducted a records check of Plaintiff and found that he had numerous misdemeanor

17   warrants for his arrest, primarily for failure to appear, and Applegate shared this

18   information with Jahnke and Ray. (*Id* ¶ 2.) Defendants decided to conduct a knock-and-

19   talk at Plaintiff's last known address; however, they were advised Plaintiff had not been

20   at that residence recently. (*Id.* ¶¶ 3–4.) Defendants attempted to locate Plaintiff at

21   possible job sites and another residential address, to no avail. (*Id.* ¶¶ 8–9.)

22       A woman at the last residential address directed Defendants to a house on the

23   corner of 10th Avenue and Buckeye, where Defendants observed a bicycle that matched

24   the description of the bicycle Plaintiff was known to ride. (*Id.* ¶¶ 13, 16.) This house had

25   a chain link fence surrounding the front yard and a gate. (*Id.* ¶ 17.) Applegate

26   approached the gate and could see someone seated inside a porch enclosure; Applegate

27   called out Plaintiff's name, and Plaintiff came to the gate. (*Id.* ¶¶ 18–19; Doc. 58 at 2.)

28   Upon request, Plaintiff handed his Arizona driver's license to Applegate, which

1     confirmed Plaintiff's identity. (Doc. 35 ¶ 20; Doc. 58 at 2.) Applegate asked Plaintiff to

2     come out of the yard to discuss a case with him, but Plaintiff refused and advised

3     Applegate to get a warrant. (Doc. 35 ¶ 22; Doc. 58 at 2.) According to Plaintiff, he and

4     Applegate had a discussion about the officers' need for a warrant to enter the premises

5     absent any exigent circumstances. (Doc. 7 at 3.) Plaintiff also told Applegate that he was

6     aware there was a misdemeanor warrant for his arrest; however, Applegate told Plaintiff

7     the officers were not there on the misdemeanor warrant. (Doc. 58 at 2.)

8           Defendants then went into a huddle, and Applegate explained the situation to

9     Jahnke; they agreed that Applegate would attempt to detain Plaintiff the next time he

10    made contact. (Doc. 58 at 2; Doc. 35 ¶ 23.) Applegate returned to the front gate and

11    handed Plaintiff his driver's license back; when Plaintiff reached for his license,

12    Applegate grabbed his wrist and pulled extremely hard in an attempt to pull Plaintiff over

13    the fence. (Doc. 35 ¶ 24; Doc. 58 at 3.)

14          The parties dispute what transpired next. Plaintiff states that he pulled back and

15    broke the hold, landing on his posterior. (Doc. 58 at 3.) Then, after he fell back,

16    Defendants lifted the latch, rushed into the yard, and tackled and cuffed Plaintiff. (*Id.*)

17    Defendants state that when Plaintiff pulled back, he pulled Applegate through the gate,

18    which had not been locked, and Applegate grabbed Plaintiff around the waist, and they

19    went to the ground. (Doc. 35 ¶¶ 25–26.) Applegate then cuffed Plaintiff, and Ray helped

20    Plaintiff up and escorted him to the patrol car. (*Id.* ¶ 27.)

21          Plaintiff was booked for his outstanding misdemeanor warrants. (*Id.*)

22          At some point thereafter, Plaintiff was charged with Attempt to Commit Robbery

23    and Burglary in the 2nd Degree, and, in March 2015, he pled guilty to Burglary in the

24    2nd Degree. (*Id.* ¶ 28; Doc. 35, Ex. 11 (Doc. 35-1 at 57).)

25    **IV.    Fourth Amendment Violation**

26          **A.     Governing Standard**

27          The Fourth Amendment guarantees "[t]he right of the people to be secure in their

28    persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S.

- 4 -

1    Const. amend. IV.  It is a basic principle that "searches and seizures inside a home

2    without a warrant are presumptively unreasonable.'"  *Brigham City v. Stuart*, 547 U.S.

3    398, 403 (2006) (quotation omitted).  "Because the curtilage is part of the home, searches

4    and seizures in the curtilage without a warrant are also presumptively unreasonable."

5    *United States v. Perea-Rey*, 680 F.3d 1179, 1184 (9th Cir. 2012) (citing *Oliver v. United*

6    *States*, 466 U.S. 170, 180 (1984)).

7    Despite this "presumption of invalidity attaching to warrantless entry . . . 'for

8    Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly

9    carries with it the limited authority to enter a dwelling in which the suspect lives when

10   there is reason to believe the suspect is within.'"  *United States v. Gooch*, 506 F.3d 1156,

11   1158 (9th Cir. 2007) (quoting *Payton v. New York*, 445 U.S. 573, 603 (1980)).  This is

12   because an arrest warrant by itself, "authorizes the police to deprive a person of liberty,"

13   and thus "necessarily . . . authorizes a limited invasion of that person's privacy interest

14   when it is necessary to arrest him in his home."  *Steagald v. United States*, 451 U.S. 204,

15   214 n.7 (1981).  Thus, a valid arrest warrant, whether it is for a felony, a misdemeanor, or

16   even a bench warrant for failure to appear, affords police officers limited authority to

17   enter a residence to effectuate the arrest.  *Gooch*, 506 F.3d at 1159.

18        **B.    Discussion**

19        As stated, at the summary judgment stage, the Court takes as true Plaintiff's facts,

20   which are that Defendants tried to grab Plaintiff's wrist and, after Plaintiff broke the hold

21   and fell back, Defendants simply opened the gate, entered Plaintiff's yard, and arrested

22   him.  Plaintiff's enclosed yard in front of his house clearly constitutes curtilage subject to

23   Fourth Amendment protection.  *See Oliver*, 466 U.S. at 182 n.12; *United States v.*

24   *Struckman*, 603 F.3d 731, 747 (9th Cir. 2010).  And there is no dispute that Defendants

25   did not have a search warrant to enter Plaintiff's property.

26        There is also no dispute that at the relevant time, Plaintiff had outstanding

27   misdemeanor arrest warrants.  (*See* Doc. 35, Exs. 4–9.)  As long as Defendants had

28   reason to believe Plaintiff was within the curtilage of the home, they had authority to

1    enter it to arrest Plaintiff pursuant to those outstanding arrest warrants.  *See Gooch*, 506

2    F.3d at 1158–59.  Plaintiff verified his identity to Defendants with his driver's license;

3    thus, their entry into the yard was not a violation of the Fourth Amendment.

4        That Defendants may not have been fully aware at the time that they had the

5    authority to enter the yard to arrest Plaintiff pursuant to the misdemeanor arrest warrants

6    does not alter this determination.  Their subjective intent is irrelevant; only objective

7    factors are considered in determining whether an officer's conduct violates the Fourth

8    Amendment.  *Perea-Rey*, 680 F.3d at 1187 (citations omitted).

9        Plaintiff fails to present any specific facts or evidence to establish a material

10   factual dispute whether there was a Fourth Amendment violation.  He contends that

11   Defendants did not go to his house on June 21, 2014, to arrest him pursuant to the

12   misdemeanor warrants; rather, they arrested him for suspicion of the robbery and only

13   later discovered the outstanding warrants, which they now claim as grounds to support

14   their entry into his yard.  But Plaintiff's own facts and evidence belie this contention.  In

15   his Response, Plaintiff states that he and Applegate discussed his outstanding

16   misdemeanor arrest warrants, thereby confirming that Defendants were aware of them at

17   the relevant time.  (Doc. 58 at 2; *see* Doc. 35, Ex. 2, Applegate Decl. ¶ 4 (Doc. 35-1 at

18   8).)  Also, the police report that Plaintiff submitted with his Response documents that

19   Plaintiff was taken into custody and booked on his outstanding misdemeanor arrest

20   warrants.  (Doc. 57, Ex. 1 (Doc. 57 at 7.)

21       Plaintiff next argues that Defendants did not properly announce their presence and

22   purpose before entering.  (Doc. 57 at 2–3.)  He relies on 18 U.S.C. § 3109, the "knock

23   and announce" statute, which requires officers to give notice of their authority and

24   purpose before breaking into a home to execute a search warrant.  (*Id.*)  *See United States

25   v. VonWillie*, 59 F.3d 922, 925 (9th Cir. 1995).  Section 3109 governs the conduct of

26   federal officers, not city police officers.  *United States v. Combs*, 394 F.3d 739, 742 n.1

27   (9th Cir. 2005).  Even so, "§ 3109 is the federal codification of the common-law knock

28   and announce principle," and it is relevant to whether Defendants acted reasonably under

1    the Fourth Amendment. *Id.* The goals underlying the knock-and-announce rule are to

2    "protect[] the sanctity of the home, prevent[] the unnecessary destruction of private

3    property through forced entry, and avoid[] violent confrontations that may occur if

4    occupants of the home mistake law enforcement for intruders." *Id.* at 744.

5           Here, when Defendants first arrived at Plaintiff's house, they stayed outside of the

6    gated yard, respecting that the yard constituted curtilage associated with the sanctity of

7    Plaintiff's home. There was no mistaking that Defendants were police officers, and they

8    explained that they were there to talk to Plaintiff, who then verified his identity and

9    approached the gate to speak to Defendants. These actions substantially comply with the

10   knock-and-announce rule, even if Defendants did not specifically state that they were

11   there to arrest Plaintiff on misdemeanor arrest warrants.

12          Finally, Plaintiff argues that Defendants did not have probable cause to arrest him

13   for attempted robbery. (Doc. 57 at 4.) But because there were outstanding misdemeanor

14   warrants for Plaintiff's arrest that gave Defendants limited authority to enter the curtilage

15   of Plaintiff's home to effect an arrest, whether or not there was probable cause to arrest

16   Plaintiff for attempted robbery is of no moment.

17          In sum, the Court finds that Defendants' actions did not violate the Fourth

18   Amendment, and their Motion for Summary Judgment will be granted. The Court need

19   not address Defendants' argument under *Heck*.

20          **IT IS ORDERED:**

21          (1)    The reference to the Magistrate Judge is withdrawn as to Defendants'

22   Motion for Summary Judgment (Doc. 34)

23          (2)    Defendants' Motion for Summary Judgment (Doc. 34) is **granted**.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1    (3)    The Clerk of Court must enter judgment accordingly and terminate this

2    action.

3    Dated this 15th day of March, 2017.

4

5    _____
     Honorable G. Murray Snow

6    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28